IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOSEPH ROBERT MITCHELL WILLIS,

   Plaintiff,

v.

SGT. GOODRICH and
SGT. MICHAELS,

   Defendants.

Civil Action No.:  PX-24-415

**MEMORANDUM OPINION**

Pending in this civil rights action is Defendant Sgts. Leon Goodrich and Heath Michael's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF Nos. 19 & 25. The Court notified Plaintiff Joseph Robert Mitchell Willis of his right to respond to the motion or risk an adverse decision without his input. ECF No. 20. Willis has failed to respond. After careful review, the Court deems a hearing unnecessary. *See* D. Md. Local R. 105.6 (2025). For the reasons stated below, Defendants' motion will be granted.

**I.     Background**

The Complaint alleges that while Willis was incarcerated at North Branch Correctional Institution ("NBCI"), Sgts Goodrich and Michael unnecessarily restrained and injured him, denied him medical care, and allowed him to live without restroom facilities, all in violation of his Eighth Amendment right to be free from cruel and unusual punishment. ECF No. 1. The record, construed most favorably to Willis, shows that on July 13, 2023, Willis informed Goodrich that the toilet in his cell was not working. ECF No. 3. Although Willis alleges that the toilet had been

clogged for several days, maintenance repaired the toilet within 24 hours of learning about the problem. ECF No. 19-4 at 15-26.

On the same day, Willis informed officers of his need to use the bathroom. During that time, corrections officers were conducting a "bar check" or security inspection of each cell on the tier. *Id.* ¶ 4; *see also* ECF No. 19-3 at ¶ 5. Sgt. Goodrich instructed officers to escort Willis to the bullpen to use the restroom. *Id.* at 2. When they returned to the tier, Willis refused to go back into his cell because he wanted to use another toilet before bar check was completed. *Id.* at ¶ 6. Sgt. Goodrich advised Sgt. Michael to escort Willis to the holding cell to use the toilet there. *Id.* at ¶ 7-8. Sgt. Goodrich returned to his office once the bar check was completed. *Id.* at ¶ 8.

Willis next asked to move to another cell, and officers responded that he should "ask daylight." ECF No. 1 at 3. Sgt. Michael knew of no other available cells at the time. ECF No. 19-5 at ¶ 3. Accordingly, Sgt. Michael instructed Willis to reenter his cell. *Id.* Because Willis was classified as a "segregation inmate," officers had to remove his handcuffs through the security slot in the cell door. *Id.* at ¶ 4. Sgt. Michael directed Willis to present his handcuffs through the security slot for removal. Willis refused and instead insisted that Sgt. Michael move him to another cell. *Id.* Sgt. Michael, in turn, asked assisting officers to retrieve a tether, also known as a handcuff extension. ECF No. 19-5 at ¶ 6. The tether is a short handle that attaches to handcuffs to affords more control of the inmate and minimize the risk that the handcuff chain or hinge could be used to physically harm the officers. ECF No. 19-5 at ¶¶ 6-8.

Officers first attached the tether to one end of the handcuffs and fed the other end through the security slot in the cell door. ECF No. 19-5 at ¶¶ 8-9. Once the tether was affixed, Willis "began actively resisting and fighting against officers' attempts to pull his handcuffs to the security slot." ECF No. 19-5 at ¶ 9. In response, officers held the tether for about 15 to 20 seconds until

2

Willis stopped pulling. By this point, Sgt. Goodrich and other officers responded to the tier, removed the handcuffs from Willis, and closed the security slot. ECF No. 19-3 at ¶ 8.

The next day, the nurse who performed daily checks on the inmates had not observed any injuries to Willis from the handcuff tussle. ECF No. 19-6 at 19. Willis, however, placed a sick call complaining of a broken left thumb. *Id.* at 4. Willis was seen the same day. The medical provider noted superficial scrapes on Willis's left forearm, thumb and both hands; limited range of motion of the left thumb; and a small skin tear. *Id.* The provider ordered an x-ray of Willis' thumb but did not take any photographs. ECF No. 16-9 at 4. The x-ray showed no signs of fracture. *Id.* 6-9. Willis denied needing any pain medication. *Id.* at 4.

On July 20, 2023, Willis filed a grievance or administrative remedy procedure ("ARP"). ECF No. 19-4 at 4-6. Because the Intelligence and Investigative Division ("IID") had opened a formal use of force investigation on the incident, the ARP was dismissed. *Id.* at 4. At the conclusion of the IID, investigators found that Sgt. Michael should have filled out a use of force report to document the incident and Sgt. Michael was disciplined for that failure. The investigation also concluded that none of the officers had used excessive force to secure Willis. ECF No. 19-5 at ¶ 13.

Willis next appealed the dismissal of the ARP to the Incarcerated Individual Grievance Office ("IIGO"). ECF No. 19-8 at ¶ 5. Once the IID concluded, Willis' appeal was referred to the Office of Administrative Hearings where it remained pending at the time Defendants filed their motion. *Id.* at ¶ 6. The appeal has since resolved after a hearing in Defendants' favor. ECF No. 25-1.

## II.     Standard of Review

Defendants move to dismiss the claims under Federal Rule of Civil Procedure 12(b)(6) or, alternatively for summary judgment to be granted in their favor under Rule 56.  Such motions implicate the Court's discretion under Rule 12(d).  *See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011).  Rule 12(d) provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  The Court maintains "complete discretion" to decide whether to reach summary judgment.  *Wells-Bey v. Kopp*, ELH-12-2319, 2013 WL 1700927, at *5 (D. Md. Apr. 16, 2013) (quoting 5C Wright & Miller, *Federal Practice & Procedure* § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

Because Defendants styled the motion as one in the alternative and included a robust record, they placed Willis on notice that the Court could resolve the matter on summary judgment.  *See* ECF No. 19.  Accordingly, the Court will treat the motion as one for summary judgment.  *See, e.g., Moret v. Harvey*, 381 F. Supp. 2d 458, 464 (D. Md. 2005).  Pursuant to Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The court must "view the evidence in the light most favorable to … the nonmovant, and draw all reasonable inferences in [their] favor without weighing the evidence or assessing the witnesses' credibility."  *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002).  Importantly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).  "A party opposing a properly supported motion for summary judgment 'may not rest

upon the mere allegations or denials of his pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Fed. R. Civ. P. 56(e)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 249–50.

### III.   Analysis

#### A.   Exhaustion of Administrative Remedies

Defendants first contend that Willis failed to exhaust administrative remedies. ECF No. 19-1. The Court declines to reach this question because clearly Willis pursued his administrative claims to a full hearing reached on the merits. ECF No. 25-1. As a result, Defendants would be hard pressed to succeed in this affirmative defense. *See Jones v. Bock*, 549 U.S. 199, 215–216 (2007); *Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017). The Court next turns to Defendants' merits challenge to each claim in turn.

#### B.   Conditions of Confinement

The Complaint seems to suggest that Sgts. Goodrich and Michael should be held liable for Willis having to live with a malfunctioning toilet. In the prison context, an inmate may pursue an Eighth Amendment claim for having been deprived "the minimal civilized measure of life's necessities," *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Harsh or restrictive conditions alone cannot sustain the claim. *Id.* As for a defendant's individual culpability, the evidence must show first that "the deprivation of [a] basic human need was objectively sufficiently serious," and second, that "subjectively the officials acted with a sufficiently culpable state of mind." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original) (citation omitted). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such

5

punishment cannot be called 'cruel and unusual.'" *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (citing *Wilson v. Seiter*, 501 U.S. 294, 298–300 (1991)).

Putting to the side whether the facts construed most favorably to Willis reflect any serious harm caused by the brief deprivation of a working toilet, no facts show that either Sgts. Goodrich or Michael deprived Willis of anything with a sufficiently culpable state of mind. Rather, Sgt. Goodrich directed officers to escort Willis to other locations where he could use the facilities, and the toilet in Willis' cell was fixed within a day after Willis formally complained. By contrast, nothing suggests that either Defendant deliberately deprived Willis basic restroom accommodations. Summary judgment, therefore, is granted in Defendants' favor on this claim.

### C.     Excessive Force

Next, the Complaint accuses Defendants of using excessive force when they employed the tether. Sgt. Goodrich principally argues that the claim fails as to him because he did not participate in using the tether. ECF No. 19-1 at 24-25. The Court agrees. Indisputably, Sgt. Goodrich was not directly involved in the handcuffing incident and thus cannot be held personally liable for any alleged constitutional injury. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). Nor does the record support liability as to Sgt. Goodrich in his supervisory capacity. *See Love-Lane*, 355 F.3d at 782 (no respondeat superior liability available for claims brought pursuant to 42 U.S.C. § 1983). A supervisor may be liable for the violations of their subordinates if the supervisor knew the subordinates engaged in conduct that posed an unreasonable risk of constitutional injury and failed to respond in such a manner that gives rise to an inference of deliberate indifference or tacit authorization of their subordinates' bad acts. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Because the record construed most

favorably to Willis cannot support that any officer posed a risk of constitutional injury to Willis, any derivative supervisory liability claim fails on this ground alone.

As for Sgt. Michael, he did personally apply the tether to restrain Willis. But for this conduct to be actionable under the Eighth Amendment, the conduct must amount to "inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996), to include "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). Not only must the deprivation be objectively serious, but the acting officer must have inflicted such harm with a "sufficiently culpable state of mind." *Williams*, 77 F.3d at 761.

Although the record supports that the officers, including Sgt. Michael, used a "nontrivial" amount of force when applying the tether, *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010), nothing demonstrates that they did so "maliciously or sadistically for the very purpose of causing harm" and thus "inflicted unnecessary and wanton pain and suffering," rather than "in a good faith effort to maintain or restore discipline." *Hudson*, 503 U.S. at 6 (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)). *See also Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008) (quoting *Whitley*, 475 U.S. at 321). Sgt. Michael pulled on the tether not to inflict pain, but because Willis would not comply with reasonable directives and instead yanked the tether toward the inside of his cell. The officers, in turn, had to respond with like force to maintain control over Willis. Because no evidence suggests that Sgt. Michael or any other officer used force sadistically or maliciously with the purpose of inflicting pain, summary judgment is granted in Defendants' favor.

### D. Denial of Constitutionally Adequate Medical Care

The Complaint lastly accuses Defendants of refusing to provide Willis with adequate medical care after he was injured in the handcuffing incident. To survive challenge, the record

7

must reflect that Defendants had denied Willis care with deliberate indifference to his serious medical need. *See Estelle*, 429 U.S. at 106. Such deliberate indifference requires proof that, objectively, the prisoner was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Iko*, 535 F.3d at 241. "Deliberate indifference is more than mere negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (internal alterations omitted). A delay in treatment that "exacerbated the injury or unnecessarily prolonged an inmate's pain" may be sufficient to support a finding of deliberate indifference. *Sharpe v. S.C. Dep't of Corr.*, 621 F. App'x 732, 733–34 (4th Cir. 2015) (quoting *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)). Such a claim requires a showing that the delay resulted in "some substantial harm to the patient" such as a "'marked' exacerbation of the prisoner's medical condition or 'frequent complaints of severe pain.'" *Formica v. Aylor*, 739 F. App'x 745, 755 (4th Cir. 2018) (collecting cases).

Assuming generously that Willis suffered a serious injury (although it appears he did not), no record evidence suggests that either Defendant knew that Willis was injured such that their delay in securing him treatment could have been with deliberate indifference. ECF No. 19-5 ¶ 11 & 19-3 ¶ 9. Within 24 hours, the rounds nurse checked on Willis and saw no signs of injury. Once Willis sought medical attention that morning, he received prompt x-rays which showed no signs of fracture. Willis also declined pain medication. So, any purported delay seems not to have aggravated his injuries. On this record viewed most favorably to Willis, no evidence reflects that Defendants denied Willis prompt medical attention at all, let alone with deliberate indifference to

his medical needs, or that any delay in care had aggravated his injury. Summary judgment is thus granted in Defendants' favor on this claim.

## IV. Conclusion

Defendants' motion, construed as one for summary judgment is granted. A separate Order follows.

| | |
|---|---|
|    9/3/25 | /S/ |
| Date | Paula Xinis<br>United States District Judge |